UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


HUGH JAMES HOWARD,

        Case No. 10-10417

        Plaintiff,

        Honorable Denise Page Hood

v.

CHERYL JARVI-JONES,

        Defendant.
_____/

HUGH HOWARD AND SAM HOWARD,

        Case No. 10-11880

        Plaintiffs,

        Honorable Denise Page Hood

v.

IRWIN JOSEPH, HEATHER MORSE,
and SUPERIOR COURT OF CALIFORNIA,

        Defendants.
_____/

HUGH HOWARD,

        Case No. 10-14349

        Plaintiff,

        Honorable Denise Page Hood

v.

SHARON NOAH,

        Defendant.
_____/

**MEMORANDUM OPINION**

## I.    BACKGROUND

This matter is before the Court on three Motions to Dismiss for Lack of Subject Matter

Jurisdiction filed in three cases filed *pro se*:  *Hugh James Howard v. Cheryl Jarvi-Jones,* Case No.

10-10417; *Hugh Howard and Sam Howard v. Irwin Joseph, Judge Heather Morse, and Superior Court of California,* Case No. 10-11880; and *Hugh Howard, Trustee of the Standing Nail Trust v. Sharon Noah*, Case No. 10-14349.   Responses have been filed to the Motions to Dismiss by Plaintiffs.   The Court ordered the motions to be heard without a hearing.   *See* E.D. Mich. LR 7.1(f)(2).   There are several motions filed by Plaintiffs in these cases but the Court will first address the Motions to Dismiss, because the Court's subject matter jurisdiction is at issue.

## II.     COMPLAINTS

### A.     *Howard v. Jarvi-Jones,* Case No. 10-10417

Plaintiff Hugh James Howard ("Howard") and Defendant Cheryl Jarvi-Jones ("Jarvi-Jones") were married on February 14, 1992.  (Comp., ¶ 7)  On June 17, 1999, Howard and Jarvi-Jones, as Co-Trustees, established the K.S.J. Farm Revocable Living Trust for their children, Karia, Sarah and Jennifer.  (Comp., ¶ 8)  Vacant land located in Mendocino County, California, was placed in the Trust.  (Comp., ¶ 9)  On June 11, 1999, Howard and Jarvi-Jones executed a Deed of Trust with Assignment of Rents to First American Title Insurance Company with Douglas J. Amato and Susan Gail Amato ("Amatos") as beneficiaries.  (Comp., ¶¶ 10-11)  The Amatos financed the property and they entered into an Installment Note with Howard and Jarvi-Jones in the amount of $82,500.  (Comp., ¶ 11; Exs. to Comp.)  On September 18, 2006, Jarvi-Jones stated she wanted to include her grown children from another marriage in the Trust.  (Comp., ¶ 28)  The Standing Nail Trust was thereafter established.  (Comp., ¶ 30)

On October 3, 2006, Howard filed a probate action against Jarvi-Jones in the Wayne County Probate Court, State of Michigan, alleging Jarvi-Jones failed to perform her fiduciary duties under the Trust.  (Comp., ¶ 31)  Jarvi-Jones concurrently filed divorce proceedings in the Superior Court

2:10-cv-14349-DPH-VMM   Doc # 14   Filed 03/31/11   Pg 3 of 13   Pg ID 223

of California, in the County of Santa Cruz.  (Comp., ¶ 32)  The Probate Court in Michigan dismissed Howard's action in January 2007, "turning over its original jurisdiction to the Santa Cruz Action." (Comp., ¶ 40)

Howard filed a second probate action in the Superior Court of California, Mendocino County, Probate Division, on May 5, 2007.  (Comp., ¶ 42)  Howard also filed an action before the United States District Court for the Northern District of California on July 27, 2007, which was dismissed without prejudice so that Howard may pursue state relief.  (Comp., ¶¶ 45, 60-61)  Howard asserts that the Santa Cruz Court "totally ignored" the jurisdiction of the Mendocino probate and the federal court actions and denied Howard's attempts to challenge the Santa Cruz Court's jurisdiction. (Comp., ¶¶ 46-47)

Howard filed the instant action against Jarvi-Jones on February 1, 2010 alleging:  First Claim-Failure to Secure Proper Jurisdiction; Second Claim-Breach of Contract; and Third Claim-Unjust Enrichment.  In lieu of an Answer, on March 4, 2010, Jarvi-Jones filed a Motion to Dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, Rule 12(b)(2) for lack of personal jurisdiction, and Rule 12(b)(3)  for improper venue.

**B.    *Howard v. Joseph,* Case No. 10-11880**

On May 10, 2010, Howard filed a second Complaint in this District against Defendant Irwin Joseph ("Joseph"), Judge Heather Morse ("Morse") and the Santa Cruz Superior Court of California ("Santa Cruz Court"), which was amended on July 13, 2010.  The Amended Complaint seeks to vacate orders entered by the Santa Cruz Court issued without jurisdiction. (Am. Comp., ¶ 2) Joseph is a commissioner and does not have the "required stipulation pursuant to the California Constitution."  (Am. Comp., ¶ 23)  Morse is a judge and is Joseph's direct supervisor who is

3

attempting to validate Joseph's alleged findings.  (Am. Comp., ¶ 24)  Howard believed that retired Judge Kelsey was to preside at a trial in the Santa Cruz action set for February 13-14, 2008.  (Am. Comp., ¶ 41)  Joseph instead presided over the trial, but there was no trial since Howard walked out of the courtroom.  (Am. Comp., ¶ 42)  Howard filed a motion for a mistrial which was denied by Joseph.  (Am. Comp., ¶ 43)  Howard also filed a motion for recusal which was denied by the reviewing judge.  (Am. Comp., ¶ 44)  Howard claims he requested that the matter be heard by a constitutional judge and not by Joseph, a commissioner, but Joseph denied Howard's request three times.  (Am. Comp., ¶ 89)  Under the California Constitution, Howard claims that without a stipulation from the parties that a matter be heard before a commissioner, any judgment entered by the court commissioner is void.  (Am. Comp., ¶ 91)

On March 18, 2008, Joseph entered a Statement of Decision after Trial and a Judgment of Dissolution of Marriage Order was entered on June 8, 2008.  (Exs. to Am. Comp.)  Out of the $909,000 real estate property between Howard and Jarvi-Jones, Howard was not given any of the property as separate property.  (Am. Comp., ¶ 45; Exs. to Am. Comp.)  Howard appealed the orders and judgment to the California Court of Appeals, Sixth Appellant District, which affirmed the lower court's judgment, and the California Supreme Court declined to review the matter.  (Am. Comp., ¶¶ 48, 52)

Howard alleged the following in his Amended Complaint:  First Claim-Fraud, Wanton Negligence and Breach of Duty; Second Claim-Lying to a Federal Agency to Defraud Plaintiff; Third Claim-Deprivation of Rights; Fourth Claim-Lack of Jurisdiction; Fifth Claim-Exempt Status of Benefits; and, Sixth Claim-Obstruction of Justice.  In lieu of an Answer, Joseph, Morse and the Superior Court of California filed a Motion to Dismiss pursuant to Rule 12(b)(1) and (6) for lack

of subject matter jurisdiction and failure to state a claim upon which relief may be granted.

     C.    ***Howard v. Noah,*** **Case No. 10-14349**

The third action before this Court initiated by Howard was filed on October 29, 2010 against Defendant Sharon Noah ("Noah"). The Complaint alleges that Jarvi-Jones is forcing a sale of exempted trust assets in order to pay for Jarvi-Jones' divorce attorney fees, which is in disregard of the fact that the assets belong to her daughters. (Comp., ¶ 4) Jarvi-Jones enlisted Noah, a real estate agent in Willits, California, to accomplish the sale. (Comp., ¶ 5) Howard claims that Noah had knowledge of the contractual relationship between Howard and Jarvi-Jones as trustees and their daughters, but failed to inform Howard of Noah's endeavors behind the scenes. (Comp., ¶¶ 5-6) Jarvi-Jones allowed Jennifer Greene, her trial counsel, to attach her fees on the exempted trust assets. (Comp., ¶ 18.b.) Jarvi-Jones was notified in writing that she was to be removed as a trustee, and, without objection in writing, that event was accomplished on December 31, 2009. (*Id.*) Howard and his brother, Sam, camped on the trust property and determined that there was no "For Sale" sign on the property. (Comp., ¶ 32)

Howard alleges a one count claim against Noah in his Complaint of Tortious Interference. In lieu of an Answer, Noah filed a Motion to Dismiss for lack of subject matter jurisdiction under Rule 12(b)(2), lack of personal jurisdiction and improper venue.

## III.    ANALYSIS

    A.    **Subject Matter Jurisdiction/Domestic Relations Exception**

Defendants argue that this Court lacks subject matter jurisdiction over questions of divorce and alimony. In response, Howard argues that this Court has jurisdiction over the cases and that the Superior Court of California lacked jurisdiction to review the Trust and property at issue.

The presence or absence of jurisdiction is the "first and fundamental question presented by every case brought to the federal courts." *Caudill v. N. Am. Media Corp.,* 200 F.3d 914, 916 (6th Cir. 2000). Federal courts have a duty to consider their subject matter jurisdiction in every case and may raise the issue *sua sponte. Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.,* 556 F.3d 459, 465 (6th Cir. 2009). "Federal Courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994). The burden of establishing jurisdiction rests upon the party asserting jurisdiction. *Id.* The presumption is that a federal court lacks jurisdiction in a particular case until it has been demonstrated that jurisdiction over the subject matter exists. *Lehigh Mining & Mfg. Co. v. Kelly*, 160 U.S. 327 337 (1895). The facts showing the existence of jurisdiction must be affirmatively alleged in the complaint. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178 (1936); Fed.R.Civ.P. Rule 8(a)(1). Federal courts hold the *pro se* complaint to a "less stringent standard" than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519 (1972).

The domestic relations exception precludes federal courts from exercising jurisdiction over cases whose substance is generally domestic relations. *Barber v. Barber,* 62 U.S. (21 How) 582, 584 (1858). "Even when brought under the guise of a federal question, a suit whose subject is domestic relations generally will not be entertained in a federal court." *Firestone v. Cleveland Trust Co.,* 654 F.2d 1212, 1215 (6th Cir. 1981). The Supreme Court has held that federal courts lack jurisdiction to issue divorce, alimony or child custody decrees; jurisdiction does not extend to other related issues simply because domestic relations considerations are implicated. *Ankenbrandt v. Richards,* 504 U.S. 689, 703-04 (6th Cir. 1992). Domestic relations matters are the province of state law. *McCarty v. McCarty,* 453 U.S. 210, 220 (1981). The domestic relations exception applies

6

where the case is a "core" domestic relations case, seeking a declaration of marital or parental status and the division of marital assets. *Catz v. Chalker,* 142 F.3d 279, 291 (6th Cir. 1998). States, not the federal government, have been considered the "exclusive arbiter" of a situation falling in the general category of domestic relations. *Gray v. Richardson,* 474 F.2d 1370, 1373 (6th Cir. 1973). The district court  lacks federal subject matter jurisdiction and must dismiss a case if the domestic relations exception is implicated. *See McLaughlin v. Cotner,* 193 F.3d 410, 415 (6th Cir. 1999).

Jarvi-Jones claims that Howard is attempting to re-litigate the disposition of marital property located in California that has been adjudicated to final disposition in the divorce proceedings in the California Superior Court, County of Santa Cruz. She has been a resident of California since 1987 and has no business connections in the state of Michigan. Her last visit in Michigan was in 2004 when her father was ill. Jarvi-Jones initiated marriage dissolution proceedings against Howard on September 19, 2006. At the time of the filing of the petition, they owned a 62 acre lot located at 1075 Hearst Willits Road in Willits, California. The title of the property was held in a revocable living trust called "K.S.J. Farm Revocable Living Trust," although Howard refers to the trust as the "Standing Nail Trust." On June 11, 2008, the California Superior Court entered a judgment that disposed all of the marital assets, including the Willits property. Howard challenged the jurisdiction of the trial court as well as the merits of the trial court's judgment before the California Court of Appeals, Sixth Appellate District. The appellate court ruled in Jarvi-Jones' favor. The California Supreme Court denied Howard's request to review the matter. Jarvi-Jones currently has a motion pending in the California Superior Court for an order for sale of the Willits property in order to satisfy the judgment in the case. Jarvi-Jones argues that Howard's Complaint against her challenges the jurisdiction of the California Superior Court regarding the marital property upon dissolution of

the marriage.

The California Superior Court Defendants argue that the California Superior Court has original jurisdiction over the dissolution of marriage action and the final judgment in the California Superior Court precludes constant re-litigation of the same underlying facts and legal determinations of the original case. As to Howard's Writ of Quo Warranto filed in this case, the California Superior Court Defendants claim that the Writ attempts to give notice regarding a bar "for sale of exempted trust assets" which relates to the property dispute between Howard and Jarvi-Jones. They argue that this Court lacks subject matter jurisdiction over the property at issue.

Noah argues that although she was not a party to the domestic relations action in California, the only issue raised in Howard's Complaint against her is the disposition of the marital property upon dissolution of the marriage. Noah asserts that the Court lacks subject matter jurisdiction over the disposition of the marital property.

Liberally construing the Complaints and documents submitted by Howard in these three cases before the Court, the Court finds that Howard has failed to carry his burden that this Court has subject matter jurisdiction over the actions. As admitted by Howard in his Complaints, a judgment for final dissolution of marriage was entered by the California Superior Court and that the property at issue contained in a Trust was subject to the orders of the California Superior Court. Howard's allegations that Jarvi-Jones breached the Trust created for their daughters falls within the marital property disposition which is subject to the California Superior Court's authority. This Court is without authority to review the action against Jarvi-Jones.

Howard's assertion that the commissioner, the judge and the California Superior Court lacked jurisdiction to determine the disposition of the property is without merit since their actions

also fall within the California Superior Court's authority to dispose the marital property. As noted by Howard, the appellate courts have affirmed or declined to review the rulings of the California Superior Court on the disposition of the property in the dissolution proceedings. This Court does not have the jurisdiction to review the California Courts' rulings on the disposition of the marital property.

Noah's connection to Howard relates to the sale of the marital property in the Trust. Because the Court lacks authority to review any matters relating to the marital property which was subject to the marriage dissolution orders before the California Superior Court, the Court lacks subject matter jurisdiction over Howard's claim against Noah.

The Court dismisses the three cases filed by Howard relating to the marital property held in the Trust under the domestic relations exception to this Court's federal jurisdiction based. Howard failed to carry his burden that this Court has subject matter jurisdiction over his claims.

### B.      Personal Jurisdiction

Various Defendants also argue that this Court lacks personal jurisdiction over the Defendants since they do not conduct any business in Michigan and the property at issue is located in California.

Rule 12(b)(2) provides dismissal of a matter for lack of jurisdiction over a person. Fed. R. Civ. P. 12(b)(2).   When the issue of personal jurisdiction is raised, the burden of proof rests upon the party asserting jurisdiction. *Market/Media Research, Inc. v. Union-Tribune Publishing Co.*, 951 F. 2d 102, 104 (6th Cir. 1992). This burden can be met by establishing with reasonable particularity sufficient contacts between the defendant and the forum state to support personal jurisdiction. *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 887 (6th Cir. 2002) (quotation and citation omitted). The facts will be construed in the light most favorable to the nonmoving party. *Id.* The

court need only determine whether a plaintiff presented a *prima facie* showing of jurisdiction on the face of the complaint. *Market/Media Research, Inc.*, 951 F. 2d at 104. This may include the pleadings and any affidavits to support any factual allegations. *Id.* Dismissal is warranted only if all the facts plaintiff asserts "collectively [fail] to state a *prima facie* case for jurisdiction." *Id.* at 105. A district court is not required to hold an evidentiary hearing when a plaintiff's pleadings and affidavits are insufficient to make a *prima facie* showing of fact supporting the court's assertion of *in personam* jurisdiction. *Id.* at 106.

Due process mandates that jurisdiction be exercised if a defendant has sufficient "minimum contacts" in the forum state that would not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Before a court can exercise personal jurisdiction over a non-resident defendant, it must determine that "minimum contacts" exist between the forum state and the non-resident defendant which comport with due process. *Asahi Metal Ind. v. Super. Ct. of Cal., Solano Ct.*, 480 U.S. 102, 107 (1987). The test is a determination by the forum court as to whether it is reasonable, due to the non-resident defendant's conduct in connection with the forum state, for the non-resident defendant to anticipate being haled into court in the forum state. *World Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1985). A further inquiry is whether the non-resident defendant purposefully availed itself of the privilege of conducting activities within the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). In order to determine whether minimum contacts exist, the court must focus on the quantity, quality, and nature of the defendant's activities, together with the relationship of those activities and the forum state. *Rush v. Savchuk*, 444 U.S. 320 (1980). Based on the above cases, the Sixth Circuit has set forth three criteria that must be met before a court will exercise personal jurisdiction:

10

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 150 (6th Cir. 1997).

Applying the three factors set forth by the Sixth Circuit, the Complaints and other documents submitted by Howard fail to establish that this Court has personal jurisdiction over the Defendants in the three cases noted above. None of the Defendants have purposefully availed themselves of the privilege in taking any actions in Michigan. Jarvi-Jones is a resident of California and has only visited Michigan when her father was ill. The property and the Trust at issue are located in California. Joseph, Morse and the California Superior Court perform their duties within the California court system. These Defendants do not live or work in Michigan. Noah is a realtor in California. She has no business in Michigan and the property at issue is in California.

The causes of action alleged by Howard did not arise from any of Defendants' activities in Michigan since none of the Defendants performed any acts in Michigan related to the property and Trust at issue. Consequently, none of Defendants' actions had any connection with Michigan. It would be unreasonable for this Court to exercise jurisdiction over the claims alleged by Howard against the Defendants. The Court must dismiss Howard's Complaints for lack of personal jurisdiction. Howard failed to state a *prima facie* case for *in personam* jurisdiction.

### C.   Rooker-Feldman Doctrine

Defendants also argue that the Rooker-Feldman doctrine bars this Court from reviewing Howard's Complaints because the marital property issues were raised before the California Courts.

The Rooker-Feldman doctrine prohibits federal courts below the United States Supreme

11

Court, as set forth in 28 U.S.C. § 1257, from exercising appellate jurisdiction involving two categories of claims, those involving injuries arising directly from decisions [or] proceedings of state courts, and claims that are inextricably intertwined with issues decided in state court proceedings. *Executive Arts Studio, Inc. v. City of Grand Rapids,* 391 F.3d 783, 793 (6th Cir. 2004); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983).  The Supreme Court explained that the Rooker-Feldman doctrine is confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus.,* 544 U.S. 280, 284 (2005).  Based on *Exxon*, three elements must be met before the Rooker-Feldman doctrine can be applied:  1) the party who lost in the state court proceeding must have filed the lawsuit in federal court; 2) the state court judgment was rendered before the federal lawsuit was filed; and 3) the issue in the federal lawsuit was caused by the state court judgment.  *See Muhammad v. Paruk,* 553 F. Supp. 2d 893, 897 (E.D. Mich. 2008).

The three cases Howard filed in this District meet the elements.  First, Howard, who did not agree with the California Superior Court's rulings and orders, filed the three lawsuits in this District.  Second, the judgment for dissolution of marriage filed in 2008 was rendered before the three lawsuits were filed in this District in 2010  Finally, the disposition of the marital assets, including the real property in California and the Trust at issue, were raised and addressed by the dissolution of marriage judgment before the California Superior Court.  Defendants' Motions to Dismiss based on the Rooker-Feldman doctrine are granted.

    **D.**    **Remaining Motions**

Howard filed several motions in all three cases.  Because the Court lacks subject matter jurisdiction over the three Complaints filed by Howard, the Court is without authority to act on the remaining motions, requests and writs filed by Howard.  The Court considers these motions, requests and writs as moot.

## IV.    CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss are granted.  A separate order and judgment in each case will be entered.


s/Denise Page Hood
Denise Page Hood
UNITED STATES DISTRICT JUDGE


Dated:  March 31, 2011


I hereby certify that a copy of the foregoing document was mailed to Hugh James Howard, 17473 Middle Belt Road, Romulus, MI 48174 and  the attorneys of record on this date, March 31, 2011, by electronic and/or ordinary mail.


s/LaShawn R. Saulsberry
Case Manager, (313) 234-5165


13